## PATRICK GANLEY *vs.* WILLIAM LOONEY.

G., owning a lot of land abutting on a street and separated from land of N. by a way extending from the street to a third lot, also owned by G., in the rear of and adjoining the two others, and on which was situated his house, conveyed the first lot to L. by a deed bounding it on the way, which it described as of a certain width and as "passing southwesterly of the granted premises, and northeasterly of land of N., from the street to my house." *Held*, that this description of the way made it a sufficient boundary for the granted premises for any distance short of the house; that their corner upon the way nearest to the house could be determined only by the intersection with the way of some other

line bounding them; and that, if this intersecting line was described so as to render its course certain, on the face of the deed, only to a point at some distance from the way, the presumption on the face of the deed was, that the corner was where this line, extended on the same course, would meet the way.

TORT for trespass in erecting a building upon the plaintiff's close. The answer denied title in the plaintiff, and alleged title in the defendant, in the disputed premises. At the trial, in the superior court, before *Putnam,* J., without a jury, a plan of the land was introduced in evidence, substantially as follows:

There were also introduced in evidence three quitclaim deeds. The first, dated August 5, 1858, to the plaintiff, by the as-signees of the estate of Jeremiah Mahoney in insolvency, of "the southwesterly half of dwelling-house No. 56 Broad Street

in Salem, and the two-story house in rear of the same, with the land under and appurtenant thereto."

The second, bearing the same date, by the plaintiff, to Mahoney's assignees, of " the southwesterly half of dwelling-house No. 56 Broad Street in Salem, with the following described parcel of land under and adjoining, viz : bounded southeasterly by said street, southwesterly by the way of fourteen feet in width hereafter named, northwesterly by the common land herein described and by the way leading to the well of water on said common land, northeasterly by land of Phipps ; together with the use of a way fourteen feet wide, southwesterly of the premises and northeasterly of land of Henry Naos, said way extending from Broad Street to my dwelling-house in rear of said street ; also the use, in common with the owners and occupants of my said dwelling-house, of the land next northeasterly thereof and the well of water on said common land, the same being bounded northwesterly by land of Peabody, northeasterly by the Phipps estate, southeasterly by the dwelling-house herein conveyed, and southwesterly by my dwelling-house above named and by the way leading to the well aforesaid."

The third, dated September 30, 1858, by Mahoney's assignees, to the defendant, of all their right, and all the right which Mahoney had at the date of the assignment to them of his estate, in and to " a certain parcel of real estate, situate on Broad Street in Salem, being the southwesterly half of the dwelling-house No. 56 on said street, with the land under and adjoining, ᵓounded " substantially as described in the description above quoted from the plaintiff's deed to the assignees, except that no boundaries of the common land were specified.

The northeastern bound of the land thus conveyed to the defendant, on land of Phipps, and the northeastern and northwestern boundaries of the common land, on lands respectively of Phipps and Peabody, being unimportant to the case, are omitted from the foregoing copy of the plan. The line of hyphens on the plan represents a line parallel with and fourteen feet distant from the southwestern boundary of the passageway leading from Broad Street.

The plaintiff offered evidence that when these deeds were made the house marked as Looney's stood as appears on the plan, but was afterwards destroyed by fire, whereupon the defendant moved another house upon the land and placed it further southwest, upon the lines marked with dots upon the plan, which was the alleged act of trespass.

The defendant contended that on this evidence he was entitled, as matter of law, to judgment in his favor; but the judge " upon this evidence found that, upon a proper construction of the deeds as applied to the plan, the plaintiff was the owner of a portion of the premises under the house," being the triangular piece of land marked with an asterisk on the plan; gave judgment for the plaintiff; and reported the case for revision by this court.

*C. Sewall,* for the defendant.

*S. B. Ives, Jr., & S. Lincoln, Jr.,* for the plaintiff.

WELLS, J.    The decision of the court below includes both law and fact.    The papers do not show that there was a ruling upon any distinct question of law.    In such cases of trial by the court, where a jury trial has been waived, the decision of the judge is conclusive and final, unless there was some ruling upon distinct questions of law presented in the case, or unless some question of law is necessarily involved in the decision.    If the facts warrant and will support the conclusion, this court has no authority to revise it.    And in determining whether they do warrant it, or whether a question of law is necessarily involved in the decision, all proper inferences of fact are to be drawn, and all doubtful questions of fact are to be regarded as determined in favor of the conclusion to which the court below arrived.

The question, in the present case, was one of boundary There was no dispute as to the position and direction of the main portions of the northwesterly and southwesterly lines of the defendant's land.    If those lines were to be extended in the same direction until they meet, they would include the *locus,* The court decided that, " upon a proper construction of the deeds as applied to the plan," they did not include the *locus;* but that the plaintiff was owner of a portion of the premises under the

corner of the defendant's house, being the extreme westerly corner of the lot as claimed by the defendant.

The deed, under which the defendant claims title, bounds him on the southwest on a way of fourteen feet in width, which is described as passing " southwesterly of the premises, and northeasterly of land of Henry Naos, said way extending from Broad Street to my dwelling-house." The latter part of the description of the way would carry it by and furnish a boundary line for the entire premises claimed by the defendant, including the *locus.* But the plaintiff contends that, as the grantor himself owned the land next to Henry Naos, the way ceased to be such as soon as it reached the grantor's land ; and that, the line of land of Henry Naos being the extent of its boundary on one side, the boundary of the other side could be no longer; and therefore that the defendant's front line must be terminated at a point opposite the corner of land of Henry Naos. But we are clearly of opinion that this reasoning is erroneous. The description of the way makes it a sufficient boundary for the defendant's land on that side for any distance short of the house therein mentioned ; and the corner bound can only be determined by the intersection of this line by another line which shall form a part of the northwesterly boundary of the lot.

As to this northwesterly line, there is no dispute up to a point within six or eight feet of the line of the southwesterly boundary. At that point the westerly or southwesterly corner of the former house upon the defendant's lot stood, directly opposite the easterly corner of the plaintiff's house and in line with its northeasterly end. The distance between the two houses was less than six feet; and through this space ran the passageway from the other way mentioned to the common ground. The defendant contends that his northwesterly line, which comes to this point without dispute, should be extended in the same direction until it intersects with his southwesterly boundary. This would leave the space for the narrow passageway wider as it approached the other way than it is at the undisputed point. The plaintiff contends that the true boundary is made by drawing a straight line from this last undisputed point to the point in

the other line directly opposite to the corner of land of Henry Naos; thus cutting off the corner, which is the *locus* in dispute, from the lot as claimed by the defendant. This, as we understand the report of the case, is what the judge who tried the issue determined to be " a proper construction of the deeds as applied to the plan." But it appears to us that it is not the natural construction. It is inconsistent with the well settled and salutary rule that in such cases ambiguous terms in the deed are to be taken most strongly against the grantor, or the party whose words they are. And we should be inclined to say that the terms are not ambiguous in themselves. They may become so, if it should appear that the narrow passageway, upon which the defendant is bounded in part, upon the northwest, at the time the deed was made did in fact run across that corner, so as to indicate a change in the direction of that line. But apparently there was no evidence at all upon that point. If there had been, we should have probably been compelled to regard the finding of the court below as conclusive, it being a matter of fact. But in the absence of any evidence as to the direction and limits of that passageway, the case stands thus: The plaintiff, having been once the owner of both lots, and proving that title, the burden is upon the defendant to establish his title to the *locus*. Upon the undisputed facts, and the terms of his deed, we think, as a matter of law, he makes a *primâ facie* case. The court erred, therefore, in deciding that the plaintiff was owner of the *locus*, without any proof in regard to the direction and limits of the narrow passageway, which is made the boundary of that part of the defendant's lot where the dispute arises. Consequently there must be a

*New trial.*